UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
TROY SCHUMMER,

              Plaintiff,                HONORABLE JOSEPH E. IRENAS

     v.                                 CIVIL ACTION NO. 11-6427
                                              (JEI/KMW)
BLACK BEAR DISTRIBUTION, LLC
and JIM GROSS,                               OPINION

              Defendants.
```

**APPEARANCES:**

KARPF, KARPF & CERUTTI, P.C.
Christine E. Burke
331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA
    Counsel for Plaintiff

SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, PC
Jeffrey P. Resnick
East Gate Corporate Center
308 Harper Drive
Suite 200
Moorestown, NJ 08057
    Counsel for Defendant

**IRENAS**, Senior District Judge:

    This is an employment discrimination case. Plaintiff Troy Schummer was terminated by Defendant Black Bear Distribution, LLC ("Black Bear"). Schummer brings claims against Black Bear and Defendant Jim Gross under the Family and Medical Leave Act ("FMLA") and the New Jersey Law Against Discrimination

1

("NJLAD"). Presently before the Court is Defendants' Motion for Summary Judgment.[1] (Dkt. No. 15) For the reasons given below, the Motion will be granted.

## I.

For the purposes of this Motion, the Court resolves any factual disputes in favor of the Plaintiff Troy Schummer.[2] Black Bear is a food product cold storage and distribution company. (DSMF[3] ¶ 1) Schummer began working for Black Bear on February 26, 2007, in its shipping and receiving department. (*Id.* ¶ 2; PSMF[4] ¶ 1) In October 2009, he was promoted to third-shift supervisor. (PSMF ¶ 2) His responsibilities included overseeing employees on the third shift, assigning employees product to take to trucks, and making sure the product was loaded onto the trucks in a timely manner. (DSMF ¶ 4)

Defendant Jim Gross was an Operations Manager and Schummer's direct supervisor from 2008 until Schummer's termination. (*Id.* ¶ 5; PSMF ¶ 3) Schummer also reported indirectly to John Tsigounis, the General Manager. (*Id.* ¶ 4)

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4). The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

[2] In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the nonmoving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

[3] DSMF refers to Defendants' Statement of Material Facts submitted in support of their Motion for Summary Judgment. (Dkt. No. 15)

[4] PSMF refers to Schummer's Statement of Material and Disputed Facts submitted in support of his Brief in Opposition to Defendants' Motion for Summary Judgment. (Dkt. No. 17)

In spring 2011, Schummer's mother was diagnosed with a tumor and moved in with him so that he could take care of her. (*Id.* ¶¶ 7-8)  She passed away on May 10, 2011.  (*Id.* ¶ 10)  After she died, Schummer requested time off from Gross.  He received five days of bereavement leave and took an additional week off using vacation time.  (DSMF ¶¶ 8, 10)

Shortly after he returned to work, Schummer began exhibiting signs of depression and anxiety (PSMF ¶ 12), and after approximately one month, he began overmedicating himself with klonopin that his doctor had prescribed for his depression and anxiety.  (*Id.* ¶ 16-18)  Around this time, he began missing work without explanation.  After one such absence, Schummer called Gross and told him that he was depressed and overmedicating.  (DSMF ¶ 14)  Prior to this point, Schummer had not had any performance issues at work.  (PSMF ¶ 6)

In response to Schummer's phone call, Gross contacted Kelly Burns, the Human Resources manager, to have her reach out to Schummer.  (DSMF ¶ 15)  Burns called Schummer, who also told her that he was depressed and overmedicating.  (*Id.* ¶ 16)  Burns then discussed several options that Schummer had so that he could take time off and receive treatment for his depression. (*Id.* ¶ 17)  One of the options they discussed was taking leave under the Family and Medical Leave Act ("FMLA").  (PSMF ¶ 24)  Burns explained that to take FMLA leave, Schummer had to have

his doctor sign paperwork stating that could not work because of a serious health problem and submit that paperwork within fifteen days. (DSMF ¶ 17)

After Schummer decided to take FMLA leave, Burns provided him with forms for his doctor to sign. She also gave him paperwork explaining Black Bear's FMLA leave policy, which explicitly stated that Schummer was entitled to twelve weeks of FMLA leave. (*Id.* ¶¶ 20-21) In addition, Burns referred Schummer to a doctor, Dr. Frederick Hawkins, who could provide treatment for him. Schummer had difficulty getting Dr. Hawkins to sign his FMLA form. However, after he told Burns about Dr. Hawkins's reluctance to sign the forms, Burns called Dr. Hawkins to explain Schummer's situation. Dr. Hawkins signed the form soon thereafter. (*Id.* ¶ 22)

On the form, Dr. Hawkins stated that Schummer was suffering from severe anxiety and depression due to his mother's death. He also wrote that Schummer was unable to work from July 31, 2011, until August 22, 2011, because of his anxiety and depression. (PSMF ¶¶ 28, 33) Dr. Hawkins further certified that when he returned to work, Schummer would be able to perform his job functions without any restrictions. (DSMF ¶ 28)

Schummer also discussed his problems getting his FMLA paperwork filled out with Tsigouins over the phone while he was

on leave.  After that conversation, Tsigounis sent an email to Gross and Burns recounting the conversation:

> If "you're a good guy and we want to keep to [sic] here" is being mad, sorry.  I was firm that he must call me back.  He first was telling me he wouldn't be able to get into his doctor and I told him he needed to right away.  IF [sic] he doesn't call today, can we just release him?

(Pl.'s Ex. Q)  Nothing further came from this email.

Schummer returned to work on August 22, 2011.  (PSMF ¶ 37) From August 22 until September 19, Schummer appeared to perform his job duties without any difficulty.  (DSMF ¶ 34)  On September 19, he reported to the facility and worked his entire shift without being reprimanded or sent home.  (PSMF ¶ 39) However, the next morning several employees told an incoming first-shift supervisor, Joseph Nealis, that Schummer had been sleeping on the job, was incoherent, and was slurring his words. (DSMF ¶ 39)  Nealis relayed this information to Burns, who then asked for statements from employees who had worked with Schummer that night.  (Nealis Dep. 13:20-14:11; Burns Dep. 52:4-13)

According to the employees who saw Schummer on September 19, he was nodding off, slurring his words, and was incoherent at times.  He could not log onto his computer for hours and had difficulty standing.  (Defs.' Ex. M; Sisholtz Dep. 26:4-6; Nealis Dep. 13:24-14:11; Morrone Dep. 22:10-23:3; Fanelli Dep. 21:2-22:22; Hoey Dep. 18:3-19:16)  Several employees stated that

Schummer was not able to assign work to people that evening and that he should not have been using equipment. (*Id.*)

The next day, September 20, 2011, Gross called Schummer several times and left him messages asking Schummer to call him before coming into work that day. (DSMF ¶ 46) Schummer did not return Gross's calls and showed up to work as usual. When he arrived, Gross and Tsigounis had a meeting with Schummer and observed that Schummer was slurring his words and having a difficult time standing. (*Id.* ¶ 47) Gross told Schummer that they had reports of him being unfit for work the previous night and had seen video footage of him nodding off at his computer and having a hard time using his key card. (PSMF ¶ 44) Gross repeatedly asked Schummer to tell him what was going on and told him that he thought Schummer was "on something." (*Id.* ¶ 44) Schummer denied that he was on drugs and offered to take a drug test. (*Id.* ¶ 45) Gross declined to have Schummer tested and then informed him that he was being suspended. (DSMF ¶ 48)

On September 21, 2011, Gross, Tsigounis, and Burns decided to terminate Schummer. (PSMF ¶ 51) Burns then sent Schummer a letter, which stated that Schummer was being terminated for violating two of Black Bear's company policies: failure to satisfactorily perform job duties and responsibilities due to neglect and carelessness; and reporting to work in an unfit condition. (*Id.* ¶ 52; DSMF ¶ 48)

Schummer filed his Complaint against Black Bear and Jim Gross on November 2, 2011.  (Dkt. No. 1)  Schummer alleges three counts:  1) interference and retaliation under the FMLA, 29 U.S.C. §§ 2611—19,[5] 2) discrimination and retaliation under the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1 to -49, and 3) retaliation under the New Jersey Family Leave Act ("NJFLA"), N.J. Stat. Ann. §§ 34:11B-1 to -16.  Defendants filed this Motion for Summary Judgment on all counts. (Dkt. No. 15)

**II.**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district

---

[5] Schummer has since dropped his FMLA interference claim.  (Pl.'s Br. 12 n.58)

court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 249.

## III.

The Family and Medical Leave Act provides, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(D).  Under the FMLA, it is "unlawful for any employer to discharge . . . any individual for opposing any practice made unlawful by this subchapter."  *Id.* § 2615(a)(2).

To prevail on an FMLA retaliation claim, "the plaintiff must prove that (1) [he] invoked h[is] right to FMLA-qualifying leave, (2) [he] suffered an adverse employment decision, and (3) the adverse action was causally related to h[is] invocation of

rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-02 (3d Cir. 2012). Where a plaintiff's FMLA retaliation claim is based on circumstantial evidence, the court analyzes the claim under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* at 302.

Under this framework, the plaintiff must first establish a prima facie case by showing that (1) he took FMLA leave, (2) there was an adverse employment action, and (3) that the leave caused the adverse employment action. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004). If the plaintiff makes that showing, the burden shifts "to the employer to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. *McDonnell*, 411 U.S. at 802. If the employer "meets this minimal burden," *Lichtenstein*, 691 F.3d at 302, "the plaintiff must point to some evidence . . . from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). "[T]he ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [employee] remains at all times with the [employee]." *Fasold v. Justice*,

9

409 F.3d 178, 185 (3d Cir. 2005) (alterations in original) (quoting *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 n.3 (3d Cir. 2004)) (internal quotation marks omitted).

In this case, the first two elements of Schummer's prima facie case are clearly met: Schummer took FMLA leave, and he suffered an adverse employment action, namely termination.[6] Thus, the remaining issue is whether Schummer's termination was causally related to his FMLA leave. The Court finds that it was not.

"A plaintiff may rely on a 'broad array of evidence' to demonstrate a causal link between his protected activity and the adverse action taken against him." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 284 (3d Cir. 2000)). A plaintiff may establish causation "[i]n certain narrow circumstances" when the proximity in time between his protected activity and the adverse action is "unusually suggestive." *Id.* "[T]iming plus other evidence may be an appropriate test where the temporal proximity is not so close as to be 'unduly suggestive.'" *Estate of Smith v. Marasco*, 318 F.3d 497, 513 (3d Cir. 2003); *see also Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003).

---

[6] In their reply brief, Defendants argue that Schummer "did not suffer an adverse employment action but, rather, was terminated for clear violation of Black Bear's policy." (Defs.' Reply Br. 4) This argument conflates the second and third elements of plaintiff's prima facie case and is thus unavailing. There is no dispute that Schummer was terminated; that fact is sufficient for him to establish the second element.

In examining other evidence, courts look for a pattern of antagonism, retaliatory animus, the employer's treatment of similarly situated employees, and whether the employer's reasons for the adverse action are consistent. *Marra*, 497 F.3d at 302.

Schummer attempts to establish causation in three ways. First, he argues that the temporal proximity of his termination to his FMLA leave is "unusually suggestive," thereby creating an inference of retaliation. (Pl.'s Br. in Opp'n 15)  In this case, temporal proximity alone is insufficient to support a finding of causation. Approximately one month passed between Schummer's return from FMLA leave and his termination, which is not an unusually suggestive amount of time. Thus, Schummer cannot establish causation on this basis alone.

Schummer next argues that there is evidence of inconsistent reasons for his termination sufficient to satisfy the causation prong. (Pl.'s Br. 16)  "[A] plaintiff may show that [his] employer gave inconsistent reasons for terminating [him]" to prove a causal connection. *Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 289 (3d Cir. 2001). But even viewed in a light most favorable to Schummer, the record is replete with evidence that Black Bear's reasons for terminating Schummer were consistent.

The termination letter that Kelly Burns sent to Schummer on September 26, 2011, states that Schummer was terminated on

11

September 23, 2011, because he "reported to work in an unfit condition" on September 19, 2011.  (Defs.' Ex. N)  It goes on to state that in doing so, Schummer violated "Company Policy # 9 Employees shall not report to work in an unfit condition" and "Company Policy # 6 Failure to satisfactorily perform jobs, duties, and responsibilities due to neglect and carelessness." (*Id.*)

This reason is consistent with the emails Burns received about Schummer's behavior that night.  He was seen nodding off, was incoherent and slurring his words, could not log onto his computer for hours, and had difficulty standing.  (Defs.' Ex. M) Several employees stated that Schummer was not able to assign work to people that evening.  (*Id.*)  Further, every Black Bear employee deposed about Schummer's actions on September 19, 2011, testified that Schummer was not able to perform his job that evening.  (Sisholtz Dep. 26:4-6; Nealis Dep. 13:24-14:11; Morrone Dep. 22:10-23:3; Fanelli Dep. 21:2-22:22; Hoey Dep. 18:3-19:16)

In addition, Kelly Burns, Jim Gross, and John Tsigounis all testified that Schummer was terminated because he was unable to perform his job functions on September 19 and 20, 2011.  Gross stated, "I knew that [Schummer] was in an unfit condition.  I knew that the Troy that I was talking to was not the Troy that normally worked here.  I knew that he was slurring his speech,

12

he had trouble standing up.  I knew there was something wrong with him.  What it was, I don't know."  (Gross Dep. 43:8-14)  He went on to testify that after he saw that Schummer was unfit to work on both September 19 and 20, he "took it from there" and suspended him.  (*Id.* at 47:17-24)  Burns stated that she, Gross, and Tsigounis consulted with counsel before terminating Schummer because it was the first time that they were terminating a supervisor for "coming in in an unfit condition."  (Burns Dep. 55:5-21)  Finally, when asked why Schummer was terminated, Tsigounis replied, "Being unable to do his job" on September 19.  (Tsigounis Dep. 40:15-18)  There is no inconsistency in these reasons that would suggest a causal link between Schummer's FMLA leave and his termination.

   Schummer argues that the discrepancy stems from the fact that Gross, Burns, and Tsigounis did know why Schummer was unfit for work and that they provided diverging statements as to whether he was on drugs or intoxicated.  But the evidence is clear that Schummer was terminated because he was unable to perform his duties on September 19 and 20.  The question of whether or not Schummer was on drugs or intoxicated is tangential to the determination that he was unfit for work.  Thus, this evidence cannot establish causation.

   Schummer's third and final argument for proving a causal link between his termination and his FMLA leave is that Black

Bear's proffered reasons for his termination are pretextual. (Pl.'s Br. 18) Although Schummer's pretext argument is more appropriately addressed in the third step of the *McDonnell Douglas* framework, because Schummer attempts to prove both causation and pretext in one step, the Court will address it here.

To survive summary judgment on the question of pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). "Pretext may be shown by exposing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Marra*, 497 F.3d at 306 (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 504 (3d Cir. 1997)).

None of the record evidence on which Schummer relies supports a finding of pretext. Schummer argues that Defendants did not want him to take FMLA leave and that they harbored retaliatory animus against him for doing so. But by all

14

accounts, Black Bear encouraged Schummer to take FMLA leave because he was having difficulty performing his duties at work. After Schummer failed to appear at work on several occasions in July 2011, he voluntarily told Gross and Tsouginis that he was depressed and was overmedicating.  Gross and Tsouginis then had Burns contact Schummer to discuss options so that he could take time off work and seek medical treatment.  Further, Burns was instrumental in getting Schummer's doctor, Dr. Hawkins, to sign off on his FMLA leave.

Schummer also contends that Burns told him that he could only take thirty days of FMLA leave before Black Bear would stop holding his job for him and points to his deposition testimony for support.  Even if Burns did tell Schummer that he could only take thirty days of FMLA leave, she also provided him with the FMLA paperwork, which clearly stated that he was entitled to up to twelve weeks of FMLA leave.  (Defs.' Ex. F)  In addition, Burns took several steps to ensure that Schummer did in fact get his FMLA leave approved, including calling Dr. Hawkins to encourage him to sign Schummer's paperwork.  Taken together, no jury could reasonably find that these facts establish pretext.

Schummer also points to an email that Tsigounis sent to Burns and Gross following a phone call with Schummer.  In that email, Tsigounis recounts his phone call with Schummer:

15

> If "you're a good guy and we want to keep to [sic] here" is being mad, sorry.  I was firm that he must call me back.  He first was telling me he wouldn't be able to get into his doctor and I told him he needed to right away.  IF [sic] he doesn't call today, can we just release him?

(Pl.'s Ex. Q)  Schummer argues that the last sentence is suggestive of retaliation.  But nothing else in the email — or in the record — suggests that Tsigounis sought to retaliate against Schummer for taking FMLA leave.

First, in the email itself, Tsigounis states that he told Schummer that he wanted Schummer to stay at Black Bear.  Second, in his deposition, Tsigounis elaborated that the phone conversation took place in the context of Schummer repeatedly saying that he could not get an appointment with a doctor to approve his FMLA leave and that Tsigounis was frustrated with him.  (Tsigounis Dep. 31:1-6)  Third, Tsigounis sent the email over a month and a half before Schummer was actually terminated, and there is no other indication that Tsigounis wished to terminate Schummer once he had returned to work.  Accordingly, the Court finds that a jury could not reasonably disbelieve Defendants' proffered reason for terminating Schummer or believe that invidious animus motivated Defendants' decision to terminate Schummer.

Because Schummer cannot establish a prima facie case of retaliation, summary judgment will be granted in favor of Defendants' on the FMLA claim.[7]

### IV.

Schummer has also brought claims for discrimination and retaliation under the NJLAD. Under the NJLAD, it is unlawful discrimination for an employer to discharge an employee on because of a disability or because he has engaged in a protected activity, such as taking FMLA leave. N.J. Stat. Ann. § 10:5-12a. The New Jersey Supreme Court has adopted the *McDonnell Douglas* framework described above for proving both unlawful discrimination and retaliation under the NJLAD. *Andersen v. Exxon Co., U.S.A.*, 446 A.2d 486, 490-91 (N.J. 1982); *Henry v. N.J. Dep't of Human Servs.*, 9 A.3d 882, 889 (N.J. 2010); *see also Gerety v. Atlantic City Hilton Casino Resort*, 877 A.2d 1233, 1237 (2005).

To establish a prima facie case for discrimination, the plaintiff must show that (1) he is disabled, (2) was objectively qualified for his position, (3) was terminated, and (4) the employer sought to or actually did fill his position with a

---

[7] Neither party has made any argument regarding Schummer's NJFLA claim despite the fact that Defendants have moved for summary judgment on all claims. However, as courts apply the same standard to NJFLA claims as they do to FMLA claims, summary judgment is also granted in favor of Defendants on Schummer's NJFLA claim. *See, e.g.*, *Wolpert v. Abbott Labs.*, 817 F. Supp. 2d 424, 432-38 (D.N.J. 2011).

similarly qualified person. *Armstrong v. Burdette Tomlin Mem. Hosp.*, 438 F.3d 240, 249 (3d Cir. 2006) (citing *Gerety*, 877 A.2d at 1237). To establish a prima facie case of retaliation under the NJLAD, Schummer must show that (1) he engaged in a protected activity, (2) there was an adverse employment action, and (3) that the adverse action was causally related to the protected activity. *Henry*, 9 A.3d at 889. The burden then shifts to the employer to articulate a legitimate reason for the termination. Once the employer has done so, the plaintiff must present evidence that the proferred reason is pretextual. *Id.*

Schummer argues that he has met the prima facie test for discrimination. He claims that he was disabled or perceived to be disabled due to his depression, he was qualified for his position because he was performing his job between his return on August 22 and September 19, and his position was filled after his termination. (Pl.'s Br. 25-28) But the Court need not decide this question. Even if Schummer has made out a prima facie case, his claim fails because, as discussed above, he cannot establish that Defendants' articulated reason for terminating him is pretextual.

Schummer's retaliation claim under the NJLAD also fails. In this case, Schummer argues that his protected activity was taking FMLA leave. As already discussed above, Schummer cannot establish that there was a causal link between his termination

18

and his FMLA leave. And even if he could make out a prima facie case, he still cannot establish pretext. Accordingly, summary judgment will be granted in favor of Defendants on both claims.

## V.

For the foregoing reasons, summary judgment will be granted on all counts for the Defendants. An appropriate Order accompanies this Opinion.

Date:   August 15, 2013

/s/ Joseph E. Irenas   

**Joseph E. Irenas, S.U.S.D.J.**